UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK JAVERY | CIVIL ACTION |
| VERSUS | NO: 14-2644 |
| LOCKHEED MARTIN CORPORATION | SECTION: "A" (1) |

## ORDER AND REASONS

The following motions are before the Court: **Motion for Summary Judgment Based on Plaintiff's Inability to Prove Damages (Rec. Doc. 163)** filed by defendant Lockheed Martin Corporation; **Motion for Summary Judgment on Issue of Damages for Defamation Per Se (Rec. Doc. 165)** filed by plaintiff Mark Javery. The motions, submitted on December 13, 2017, are before the Court on the briefs with oral argument.

A telephone status conference with the Court was scheduled for January 11, 2018, for the purpose of reviewing objections to trial exhibits and selecting a new trial date. (Rec. Doc. 157). The Court cancelled that conference in order to rule on the pending motions for summary judgment. (Rec. Doc. 178).

For the reasons that follow, the motion for summary judgment filed by defendant Lockheed Martin Corporation is GRANTED, and the motion for summary judgment filed by plaintiff Mark Javery is DENIED.

I.  **Background**

Plaintiff Mark Javery filed this Title VII action against his former employer, Lockheed Martin, contending that Lockheed discriminated against him because of his race (African American) when Lockheed terminated him on May 19, 2014. Lockheed's

position is that Javery was terminated because he was dishonest during an internal investigation—an investigation that revealed that Javery had tried to circumvent an established reporting procedure in order to bolster performance data being reported to NASA.

Javery also sued Lockheed for defamation contending that the accusations against him were untrue and injurious to his reputation.

In January 2016, Lockheed moved for summary judgment on Javery's Title VII and defamation claims.[1] The Court concluded that Lockheed was entitled to judgment as a matter of law on the claims of Title VII race discrimination. (Rec. Doc. 67). The Court denied, however, Lockheed's motion for summary judgment as to the claim for defamation. (*Id.* at 12-13).

The case moved forward as to the defamation claim. A pretrial conference was held on November 17, 2016. (Rec. Doc. 120). At that conference defense counsel raised issues pertaining to the lack of clarity surrounding the specific statements upon which the defamation claim was based. Defense counsel also pointed out that while Javery had obtained new employment following his termination from Lockheed, that employment had ended. The Court ordered that Lockheed would be allowed to redepose Javery as to these issues.[2]

---

[1] Javery had also joined claims for Title VII retaliation, state law discrimination, and for violations of the federal and state whistleblower laws. Those claims were dismissed on the pleadings on March 7, 2016. (Rec. Doc. 62).

[2] The Court found Lockheed's request for additional discovery pertaining to the defamation claim to be a reasonable one. While the parties had not ignored the defamation claim while preparing the case for trial, it was obvious to the Court that the parties' focus had been on the Title VII discrimination claim, which was no longer pending. The Court was persuaded that neither party anticipated proceeding to trial solely on the state law tort of defamation. The Court became certain that this was the case when pressing Javery's counsel during a subsequent telephone conference regarding how she intended to prove certain aspects of the defamation

Javery moved to continue the trial in order to conduct follow-up discovery based on certain defense exhibits. (Rec. Doc. 124). The Court continued the trial over Lockheed's objection, and held a status conference on March 16, 2017. (Rec. Doc. 137). As of that conference the Court considered discovery to be closed and advised the parties that no additional motions would be entertained. (*Id.* at 1). Trial was scheduled for July 2017, but on April 5, 2017, the Court stayed all deadlines in the case due to Javery's counsel's medical issues. (Rec. Doc. 138). In August 2017, both parties advised the Court that they were ready to proceed to trial although issues with exhibits remained to be resolved. (Rec. Doc. 142). Issues related to trial exhibits have continued to plague this case.

On October 20, 2017, the Court held a telephone conference for the purpose of determining whether the case should be set for trial in light of the significant issues pertaining to trial exhibits. (Rec. Doc. 157). The exchange during that conference demonstrated that the parties had completely divergent views regarding the potential damages recoverable in conjunction with the sole remaining claim of defamation. Lockheed was convinced, in light of Javery's exhibit productions, that Javery lacked sufficient evidence to prove essential elements of the defamation claim. The Court therefore advised counsel that it would entertain motions pertaining to the issue of damages.

Each party has filed a motion for summary judgment on the issues of damages pertaining to defamation. Those motions are now before the Court.

---

damages claim.

## II. Discussion

At a follow-up deposition Lockheed questioned Javery as to each of the specific statements that he claims to be defamatory. Seven specific communications were identified by Javery. Lockheed contends that some of the communications were never published, and as to others there is no evidence that they actually occurred. Regardless, Lockheed contends that Javery cannot prove that he suffered any damage as a result of those alleged defamatory statements, and that the Court should therefore dismiss this matter.

Javery describes Lockheed's motion for summary judgment as an attempt to obtain yet another bite at the same summary judgment apple. Javery contends that Lockheed's arguments in essence challenge the Court's prior ruling that Lockheed's statements were defamatory per se, a ruling which Javery characterizes as the law of the case. Javery suggests that Louisiana law may not require proof of actual damages where defamation per se is involved, and that to prevail Javery need only establish that the statements were communicated to someone other than him.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477

U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones .v Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position.[3] *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

It is clear to the Court that Javery believes that the Court's 2016 ruling provides him with an unassailable defamation claim. This is incorrect for several reasons.

In denying Lockheed's 2016 motion for summary judgment as to the defamation claim, the Court stated as follows:

> Lockheed's motion for summary judgment is DENIED as to Javery's defamation claim. ***The accusations that Lockheed made against Javery are defamatory per se***. If the jury determines that the accusations are not

---

[3] The Court reiterates to Plaintiff now what it stated in conjunction with Lockheed's prior motion for summary judgment: Any arguments based on exhibits that were not expressly referred to in briefing are waived. The Court was unable to determine the relevance and significance of many of the exhibits attached to Plaintiff's motion and opposition.

only false but not made in good faith, then no privilege will attach.

(Rec. Doc. 67 at 13) (emphasis added).

That Lockheed had accused Javery of falsifying information to be presented to NASA, and attempting to obstruct Lockheed's internal investigation into the matter by lying to an investigator, could not be disputed because the summary judgment record contained proof of the statements in the Lewis letter. (Rec. Doc. 22-4 at 26). These accusations fall squarely within the meaning of defamation per se, because even though they do not imply criminal conduct, by their nature they would plausibly injure Javery's personal or professional reputation. *Costello*, 864 So. 2d at 140 (citing *Lemeshewsky v. Dumaine*, 464 So. 2d 973, 975 (La. App. 4th Cir. 1985)). The Court's characterization of Lockheed's accusations as defamation per se was made in the context of explaining why Lockheed was not entitled to summary judgment based on the defenses of truth, privilege, and lack of malice—which were its primary arguments—because with defamation per se the burden of proof as to elements like truth, fault, and good faith shifts to the defendant.[4] Publication of the statement, which is an essential element of the defamation cause of action, was not an issue.

Further, Javery claims defamation with respect to seven specific communications, which were made by different Lockheed personnel, at different times, in different settings, and to different recipients. As Lockheed correctly points out, with the exception perhaps of the Lewis letter, an examination of the substance of each of

---

[4] Four elements are necessary to establish a defamation cause of action: 1) a false and defamatory statement concerning another; 2) an unprivileged communication to a third party (publication); 3) fault (negligence or greater, such as malice) on the part of the publisher; and 4) resulting injury. *Costello v. Hardy*, 864 So. 2d 129, 139 (La. 2004) (quoting *Trentecosta v. Beck*, 703 So. 2d 552, 559 (La. 1997)).

these statements was not part of the Court's opinion when it denied summary judgment. Even if one of the specific communications constitutes defamation per se, like for instance the Lewis letter, it does not follow that each of the other communications would qualify as such. Every mention of Javery's termination and the facts surrounding it does not necessarily constitute defamation per se. It remains Javery's burden to establish that each statement that he relies upon to support his cause of action is defamatory, whether defamatory per se or not.[5]

In fact, discovery has revealed that for several of the statements Javery cannot establish what was actually said. Javery's claim pertaining to statements allegedly made to the State of Mississippi in conjunction with unemployment benefits presents a perfect example of this. Javery believes that someone at Lockheed told the State of Mississippi that he was terminated for "misconduct." The Court is persuaded that this statement alone is not defamatory per se. *See Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196, 198 (La. 1980) (statement to state benefits board that the employee was discharged for "misconduct" was not defamatory per se).

Moreover, even if all of the statements in this case were considered to be defamatory per se, Javery misapprehends what that means for his claim. The significance of establishing defamation per se as the first element of the cause of action is that with defamation per se, the elements of falsity and malice are presumed in the plaintiff's favor and may be rebutted by the defendant. *Costello*, 864 So. 2d at 140

---

[5] The Court notes that the statements allegedly made at two internal Lockheed staff meetings were not even mentioned in Javery's opposition to the 2016 motion. (Rec. Doc. 36). The Court assumes that Javery did not learn of them until after he filed his opposition, and Javery confirmed in his deposition that he learned of statements made at these meetings from Lockheed's discovery productions in this case. It is clear, therefore, that no credible argument can be made that the ruling as to defamation per se covered those statements.

(citing *Kosmitis v. Bailey*, 685 So. 2d 1177, 1180 (La. App. 2d Cir. 1996)); *see Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 675 (La. 2006). In other words, the burden of proof shifts as to those elements. But publication is an essential element of the defamation cause of action, and even where defamation per se is concerned, the plaintiff benefits from no presumptions as to publication. Lockheed's current motion challenges the statements as to publication, which was not an issue that the Court had addressed in conjunction with the prior motion, and which has nothing to do with whether or not the statements are defamatory per se.

And Javery's argument based on the Restatement of Torts that publication is satisfied so long as the statements were communicated to someone other than the plaintiff, is contrary to Louisiana law. The "someone other" must qualify as a third-party, and in Louisiana, not every other person present when statements are made will qualify. This is particularly true when statements are made in the course and scope of employment, in the presence of other employees. *See, e.g.*, *Cangelosi*, 390 So. 2d at 198; *Bell*, 698 So. 2d at 756.

Finally, although injury *may be* assumed in cases of defamation per se where publication is established,[6] the burden always rests with the plaintiff to prove his damages by competent evidence regardless of the type of injury asserted. *Costello*, 864 So. 2d at 141 (citing *Kosmitis*, 685 So. 2d at 1181). Lockheed also challenges this

---

[6] The Louisiana Supreme Court has never held that injury is presumed where defamation per se is concerned. Rather, the Supreme Court has stated that injury *may be* presumed. *Costello*, 964 So. 2d at 140; *Kennedy*, 935 So. 2d at 675. This is because words which expressly or implicitly accuse another of criminal conduct ,or which by their very nature tend to injure one's personal or professional reputation, allow for an inference of injury. *See Kosmitis*, 685 So. 2d at 1180. The Court's research did reveal at least one Louisiana appellate case and one case from this district in which the author misstates the law as to the presumption of injury. Javery's uncertainty as to this issue as noted in his briefing is understandable.

aspect of Javery's claim.

With these legal principles in mind, the Court turns to each of the specific "statements" that Javery asserts support his claim for defamation.

### **Lewis Letter**

After Javery was terminated, he appealed the termination decision to an internal executive review committee. On July 1, 2014, Patricia Lewis, Lockheed's Human Resources Vice President, sent Javery a letter advising him that his appeal had been denied. (Lockheed's Sealed Exhibit B). The letter recounts in detail the accusations of serious wrongdoing that led to Javery's termination. This letter formed the basis of the Court's 2016 determination that this case involved defamatory per se statements.

Lockheed's contention with respect to this letter is that it was sent directly to Javery via U.S. mail and was not published to any other party.

Javery does not dispute these contentions. Instead, Javery contends that "publication" occurred when Lockheed filed a copy of the letter into the public record as an exhibit to its 2016 motion for summary judgment. (Rec. Doc. 22-4 at 26). According to Javery, through the PACER system the public (including potential employers) now has access to the letter.

Javery filed this lawsuit on November 19, 2014 and his Defamation of Character claim as pleaded states as follows:

> Following the Plaintiff's suspension and pre-termination, the Defendant's investigator(s) told NASA (verbally and in writing), as well as other unprivileged persons that the Plaintiff had falsified reporting records, processes and data regarding the preventative maintenance budget data and that when asked about the January, 2014 data, the Plaintiff lied about this to the investigator(s).

(Rec. Doc. 1, Complaint ¶ 17).

The publication that Javery points to with respect to the Lewis letter occurred several months after this lawsuit was filed so it cannot form the basis of the defamation claim pleaded in this lawsuit. Javery has never amended his Complaint to allege that Lockheed's counsel defamed him during this litigation—a claim that is completely different than the claim pleaded in this lawsuit. Even so, the Lewis letter can hardly be considered the source of publication of the accusations against Javery. Javery made the allegations against him public by filing a lawsuit (which he had every right to do) and this case is not a sealed matter. The non-discriminatory reasons that Lockheed proffered for terminating Javery were central to Lockheed's defense of the Title VII claim, on which it prevailed on summary judgment.

Because Javery cannot establish publication to a third-party as to the Lewis letter, it cannot support his defamation claim. No injury or damage can result from a statement, defamatory per se or otherwise, for which publication cannot be shown. Even if the law in Louisiana requires injury to be presumed with a defamatory pre se statement, the presumption does not attach without publication.

**Letter to EEOC[7]**

On July 25, 2014, General Counsel for Lockheed submitted a position paper letter to the EEOC in response to Javery's charge of discrimination. (Lockheed Sealed Exhibit D). Footnote 1 of the front page states that Lockheed "considers this position paper to be confidential and highly sensitive." This document explains the factual basis

---

[7] Javery refers to two letters to the EEOC. The second letter is merely a transmittal letter of a document offered by Lockheed as evidence of its "well-established schedule" for data reporting. (Lockheed Sealed Exhibit E). There is nothing even arguably defamatory about this letter so the Court will not address it.

for Javery's termination but the Court agrees with Lockheed's contention that defamatory per se statements are lacking.[8] Javery has no evidence that this letter was "published" to anyone other than the staff at the EEOC.[9]

**Nan Hardin/Phil Price Meetings**

Javery contends that he was defamed when Nan Hardin with Lockheed informed her staff during a meeting about Javery's termination. Javery was not present at the meeting and he has not spoken to anyone who was present at the meeting. Therefore, Javery has no personal knowledge of what Hardin said.

Hardin was Lockheed's Senior Program Manager and the highest ranking employee at the Stennis location. (Rec. Doc. 22-5 at 1). The only personnel who would have been at this meeting, according to Javery, were senior management. Hardin's statements to her staff at the internal meeting, which occurred within the course and scope of her employment with Lockheed, do not constitute publication under Louisiana law. *See Bell*, 698 So. 2d at 756; *Cangelosi*, 390 So. 2d at 198. Javery cannot establish that the persons at that management meeting were third-persons. In fact, Javery himself did not learn of Hardin's statements until discovery production during this litigation. (Rec. Doc. 163-4, Javery deposition at 418).

---

[8] As the Court stated above, not every mention of Javery's termination and the facts surrounding it necessarily constitutes defamation per se. Javery's deposition testimony, which presents a convincing version of what occurred at Lockheed (Rec. Doc. 67 at 11), demonstrates that the factual underpinnings of his termination are not fabricated. Whether they actually amount to lying and falsifying data, which is how Lockheed has characterized them, is questionable in the Court's view.

[9] Lockheed reraises the issue of privilege with respect to the letter to the EEOC. In order for any type of privilege to attach the accusations must be made in good faith. Javery's contention is that Lockheed is lying about the reasons for firing him. Whether Lockheed was in good faith when it accused Javery of falsifying data and lying to the investigator continues to be an issue of fact not resolvable via summary judgment.

Javery contends that one of the attendees at that meeting, Phil Price, repeated the statements that he heard at his own internal staff meeting. Again, Javery was not present at the meeting and he has not spoken to anyone who was present at the meeting. As with Hardin, the Court is persuaded that Price's statements to his own staff, during the course and scope of his employment with Lockheed, do not constitute publication.[10]

### State of Mississippi

Javery filed a claim for unemployment benefits with the State of Mississippi after his termination. Javery participated in a hearing with counsel but no one from Lockheed participated. Javery contends that prior to the hearing someone from Lockheed made defamatory statements about him to the State of Mississippi. Javery does not know the content of the statements, whether the statements were oral or written, who made them, or who received them. Presumably, the State contacted the former employer before agreeing to award benefits, and the most that Javery can offer is that Lockheed informed the State of Mississippi that Javery was terminated for "misconduct." As the Court explained above, this statement is not defamatory per se.

### DOD/Security Clearance

Throughout this lawsuit Javery has maintained that one of the most damaging results from Lockheed's statements regarding the reason for his termination is that he has secret security clearance through the Department of Defense and that he will now

---

[10] The Court notes that in his deposition Javery states that he learned that one of the attendees at the meeting, "Terry," who presumably was employed by Lockheed, relayed what she heard at Price's meeting to someone at NASA. Javery confirmed that he has not spoken to anyone at NASA about what Terry might have told them. Javery did not address any statements by Terry in his opposition.

be unable to maintain that in the future thereby eliminating him from the job market in the federal sector. Javery has never been able to identify the specific statements that were made to the Department of Defense, if any, and he admittedly speculates that Lockheed even made any such statements to the Department of Defense.

These admissions alone are fatal to the defamation claim based on security clearance. Simply, Javery cannot even identify a statement much less a defamatory one. In fact, the circumstantial evidence does not support the inference that Lockheed made defamatory statements to the DOD because Javery's security clearance expired with the passage of time. The DOD did not terminate the otherwise active clearance. (Rec. Doc. 163-12, Zeilenga declaration); (Rec. Doc. 163-4, Javery deposition at 436). During the time that Javery was employed at Lockheed he was not required to have the clearance. (Rec. Doc. 163-4, Javery deposition at 437). And Javery has not attempted to renew the clearance since he was terminated from Lockheed. (*Id.* at 438). Javery obtained lucrative employment after Lockheed without the clearance.

Javery's entire theory as to this aspect of his claim is speculation built on more speculation.

### **OIG investigation**

After his termination Javery filed an administrative complaint with the NASA Office of Inspector General (OIG). Javery contends that counsel for Lockheed defamed him during an employee interview arising out of an OIG investigation by stating that Javery committed fraud. The defamation claim as to this statement suffers on several fronts.

First of all, because a transcript exists of the interview, we need not speculate

about what was actually said. (Lockheed Sealed Exhibit H). Lockheed's counsel did not say that Javery committed fraud. He did use the term fraud while trying to paraphrase the testimony of a witness but he was quickly corrected on that point. It is a stretch to say that this transcript contains defamatory statements. The Court agrees with Lockheed's contention that no reasonable reader would conclude based on the statement by counsel that Javery engaged in fraud or that Lockheed's position was that Javery engaged in fraud.

Second, the transcript from the interview is dated June 2, 2015, which is over six months *after* Javery filed his defamation claim in this Court. In other words, the allegedly tortious conduct occurred after this litigation was already pending so it cannot form the basis for Javery's defamation claim in this Court.

Finally, Javery has not addressed how this interview during a confidential investigation was published to anyone by Lockheed so as to cause him injury much less damages.

Assuming arguendo that each of the statements above did not suffer from the deficiencies identified, Javery's claim for damages is completely at odds with the evidence in this case. Based on the assumptions that Plaintiff gave to his economist, Javery claims $208,367.00 in past-wages and $3,240,548.00 in future wage loss. (Rec. Doc. 171-8). The assumptions given to the economist assume that Javery will never work again. But Javery cannot establish that his inability to work (if that is the case) is due to defamation at the hands of Lockheed. Javery cannot establish any pecuniary damages whatsoever resulting from defamation. Javery obtained employment as a project manager (with Ampirical Solutions) shortly after Lockheed terminated him. He

lost that job for reasons unrelated to Lockheed, and as of the time of his last deposition he had not been rejected from any employment due to defamation.[11] Javery cannot prove any amount of future lost wages due to defamation.

Nor can Javery prove that any past lost wages (or wages lost between the time of his termination and the beginning of his employment with Ampirical) were attributable to defamation. Javery did not lose his job at Lockheed because he was defamed. The allegedly defamatory statements were made *after* he was terminated. The loss of his lucrative employment with Lockheed was not due to defamation.

The Court recognizes that the law in Louisiana is that injury deriving from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish, even when no special damage such as loss of income is claimed. *Bell v. Rogers*, 698 So. 2d 749, 754 (La. App. 2nd Cir. 1997) (citing *Lemeshewsky v. Dumaine*, 464 So. 2d 973 (La. App. 4th Cir. 1985); *Rennier v. State Dep't Pub. Safety*, 428 So. 2d 1261 (La. App. 3rd Cir. 1983)). Even when no special damages are claimed and the defamatory statements have had little or no adverse effect on the plaintiff's reputation, damages are recoverable for the plaintiff's own embarrassment, humiliation, anxiety or hurt feelings resulting from the defamation. *Id.*

But Javery cannot establish or even create an issue of fact as to the publication of a defamatory statement capable of supporting a nonpecuniary claim because there is a complete absence of any causal link between a specific defamatory statement and the other elements of the defamation tort. In other words, Javery cannot cobble together a

---

[11] Javery had not applied for any jobs as of the time of his last deposition.

defamation claim by pointing to defamatory statements that were never published, and published statements that were not defamatory.

The Court is persuaded that Lockheed is entitled to judgment as a matter of law. Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment Based on Plaintiff's Inability to Prove Damages (Rec. Doc. 163)** filed by defendant Lockheed Martin Corporation is **GRANTED**. Plaintiff's complaint is **DISMISSED** with prejudice;

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment on Issue of Damages for Defamation Per Se (Rec. Doc. 165)** filed by plaintiff Mark Javery is **DENIED**.

January 26, 2018

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE